IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| B.D.H., B.J.H., and W.H., *by and through their guardians and natural parents*, Sheila Hart and James Hart, <br><br>       Plaintiffs,<br><br>v.<br><br>South Carolina Department of Social Services, Michael Leach, Tenevia Bowers, SCDSS Supervisor Jessica Dewese, SCDSS Supervisor,<br><br>       Defendants. | Case No. 0:23-cv-04244-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 43.] The motion is fully briefed [Docs. 49; 51] and ready for review. For the reasons discussed below, the Court grants Defendants' motion.

**BACKGROUND**[1]

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*,

---

[1] The undersigned's Rule 56 Summary Judgment Motion Procedures, https://www.scd.uscourts.gov/Forms/Scheduling_Orders/Austin_Rule_56.docx, require the parties to hold a Rule 56 conference and work toward a joint statement of stipulated material facts for purposes of the motion for summary judgment. In this case, Defendants filed a proposed statement of undisputed facts [Doc. 43-3] and indicated that counsel had sent the proposed statement of undisputed facts to Plaintiffs' counsel, who did not propose any changes or additions [Doc. 43-1 at 2 n.2]. In their response memorandum, Plaintiffs concede that the proposed statement of undisputed facts is accurate. [Doc. 49 at 1.] Accordingly, the facts provided in the proposed statement of undisputed facts will be deemed undisputed for purposes of the motion for summary judgment, and the Court will cite to this document for the relevant facts included herein.

550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiffs B.D.H., B.J.H., and W.H. (collectively, the "Children" or "Plaintiffs") are male siblings who were eight years old, four years old, and nine months old, respectively, at the time of the events giving rise to this action. [Doc. 43-3 ¶¶ 1–2.] On May 12, 2021, a teacher or counselor at B.D.H.'s school (the "Teacher") contacted Defendant South Carolina Department of Social Services ("SCDSS") to report that B.D.H. was a suspected victim of mental abuse or neglect, indicating that the Children's father had thrown their mother on the floor, kicked her, and choked her in the presence of the Children. [*Id.* ¶ 3.] The Teacher reported that their father had also thrown B.D.H. on the bed and hit him. [*Id.*] SCDSS opened an investigation and assigned primary investigative duties to case worker Eliisa Israel. [*Id.* ¶ 4.]

On May 13, 2021, Israel met with the Children's parents, who denied the allegations. [*Id.* ¶ 5.] Israel also interviewed B.D.H. and B.J.H. [*Id.* ¶ 6.] B.D.H. reported that he "sometimes 'got whippings'" but that he felt safe in the home. [*Id.*] After these interviews, Israel created a safety plan in which the Children's mother agreed to monitor the Children's interactions with their father and to ensure that no physical altercation between her and the Children's father would take place in the Children's presence. [*Id.* ¶ 7.]

Also on May 13, 2021, the Teacher contacted SCDSS again to report "'that on May 12, 2021, [B.D.H.] was left in the basement of the home without lights or a window and was not given any dinner, allegedly for "talking too much,"'" and to express "'concerns that [B.D.H.] was observed on May 13, 2021 with bruising on his arms . . . that resemble[d]

finger prints.'"  [*Id.* ¶ 8 (third alteration in original).]  After SCDSS received this supplemental report, it reassigned the investigation to Defendant Tenevia Bowers.  [*Id.* ¶ 9.]

On May 14, 2021, Bowers interviewed B.D.H.'s teacher(s), assistant principal, and school nurse and met with the Children's parents.  [*Id.* ¶ 10.]  Bowers informed the parents of the new allegations and that, as part of its investigation, SCDSS would send the Children for medical examinations and interviews.  [*Id.* ¶ 11.]  Additionally, Bowers informed the Children's parents that SCDSS would implement a new safety plan in which the Children would be removed from the home.  [*Id.* ¶ 12.]  On the same day, the Children's mother, father, and grandmother signed a kinship care agreement in which the grandmother agreed to take custody of the Children, and they moved to their grandparents' home that day.  [*Id.* ¶ 13.]

On May 24, 2021, the grandparents drove the Children to Midlands Children's Advocacy Center for forensic medical examinations.  [*Id.* ¶ 17.]  B.D.H. and B.J.H. each reported to their parents that the examiner had "'touched his penis'" and "'looked in his butt.'"  [*Id.* ¶ 22.]  W.H. was not forensically examined but was taken for a series of x-rays. [*Id.* ¶ 21.]

Plaintiffs assert four claims against Defendants, arguing that the manner in which the Children were examined breached a duty of care owed to the Children and violated their rights under the United States Constitution.  [Doc. 1-1.]  Plaintiffs' first two claims, brought under the South Carolina Tort Claims Act ("SCTCA"), assert that SCDSS was negligent and grossly negligent in authorizing invasive physical examinations of the Children and in failing to inform their legal custodian of the examinations, obtain the

3

custodian's consent for the examinations, or obtain a court order authorizing the examinations. [*Id*. at 13–16 ¶¶ 57–71.] Plaintiffs also allege, pursuant to 42 U.S.C. § 1983, that Bowers, Jessica Dewese, an unknown SCDSS supervisor, and Michael Leach[2] violated their Fourteenth Amendment rights by subjecting them to medical examinations. [*Id*. at 16–21 ¶¶ 72–100.] Plaintiffs seek actual and punitive damages, attorneys' fees and costs, and declaratory and injunctive relief. [*Id*. at 21–22.]

## **APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[2] Defendant Dewese is an SCDSS employee who acted as Bowers's supervisor. [Docs. 1-1 at 5–6 ¶ 10; 6 at 3 ¶ 14.] Plaintiffs allege that Defendant SCDSS Supervisor is an unknown supervisor who was employed by SCDSS and also acted as Bowers's supervisor, but Defendants deny that allegation, noting that they are unaware of any unnamed supervisor who was involved in the events alleged in the Complaint. [Docs. 1-1 at 6 ¶ 11; 6 at 3 ¶ 15.] Defendant Leach is the State Director of SCDSS. [Docs. 1-1 at 5 ¶ 8; 6 at 3 ¶ 12.]

4

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id*. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id*. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

5

**DISCUSSION**

Defendants argue they are entitled to summary judgment because no evidence supports the claims related to W.H.[3]; the individual Defendants are immune from liability pursuant to provisions of the South Carolina Children's Code; SCDSS is immune from liability pursuant to provisions of the SCTCA; Plaintiffs have failed to produce any evidence that SCDSS breached any applicable standard of care; the individual Defendants are entitled to qualified immunity regarding the § 1983 claims; Plaintiffs have failed to present any evidence to support their § 1983 claims against Leach, Dewese, and SCDSS Supervisor; Plaintiffs have produced no evidence that their due process rights were violated; and the injunctive relief claim fails as a matter of law. [Doc. 43-1 at 6–16.] The Court grants Defendants' motion for the reasons set forth below.

**Negligence and Gross Negligence Claims**[4]

Defendants argue that Plaintiffs' negligence claims against SCDSS fail under the SCTCA because the evidence does not show that SCDSS was grossly negligent. [*Id.* at 8–11; Doc. 51 at 5–6.] In response, Plaintiffs argue that they have shown SCDSS breached its duty as a matter of law and had a nondelegable duty to prevent unnecessary

---

[3] Plaintiffs concede that W.H.'s claim should be dismissed. [Doc. 49 at 4.] Therefore, the Court grants Defendants' motion for summary judgment as to claims brought on behalf of W.H.

[4] Plaintiffs' negligence and gross negligence claims are asserted only against SCDSS. [Doc. 1-1 at 13–16 ¶¶ 57–71.] Accordingly, the Court addresses only the arguments raised by Defendants applicable to the claims against SCDSS.

6

and unwarranted genitourinary exams on children in the absence of evidence or suspicion of sexual abuse.[5] [Doc. 49 at 6–9.]

The SCTCA is the exclusive remedy for torts committed by employees of state agencies. S.C. Code Ann. § 15-78-70(a). Under the SCTCA, state agencies are liable for their torts "in the same manner and to the same extent" as private individuals. *Id*. § 15-78-40. The SCTCA, however, carves out several exceptions to this general waiver of immunity. Relevant here is S.C. Code Ann. § 15-78-60(25), which provides that a "governmental entity is not liable for a loss resulting from . . . responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any . . . patient . . . or client of any governmental entity, *except when the responsibility or duty is exercised in a grossly negligent manner*." S.C. Code Ann. § 15-78-60(25) (emphasis added). "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000). In other words, "[i]t is the failure to exercise slight care." *Id*. Although whether conduct constitutes gross negligence is normally a mixed question of law and fact, "when the evidence supports but one reasonable inference, the question becomes a matter of law for the court." *Id*.

The Court has reviewed the record and finds no issue of material fact as to whether SCDSS was grossly negligent in referring the Children for forensic medical examinations as part of its investigation into a report of abuse. The evidence before the Court shows that SCDSS acted in accordance with child abuse response protocol in ordering the

---

[5] With respect to Plaintiffs' argument regarding the nondelegable duty doctrine, South Carolina law prohibits the application of the nondelegable duty doctrine against the sovereign. *See* S.C. Code. § 15-78-60(20).

7

examinations and that it was the medical provider, *not* SCDSS, who determined the extent and nature of the forensic medical examinations. [*See* Docs. 43-2 at 4 (expert report, opining as follows: "In my professional opinion, [SCDSS] did not breach the standard of care by referring the [Children] for forensic medical evaluation in this case. [SCDSS]'s decision to refer the [C]hildren for forensic medical examinations was required by the South Carolina Child Abuse Response Protocol."); 43-7 at 6 (43:10–17) (Bowers's testimony that she is not qualified to determine what a provider should or should not do during a forensic medical exam); 43-8 at 5 (63:14–23) (Plaintiff's expert's testimony that the manner in which a forensic medical exam is conducted is dictated by the provider performing the examination, and it would be inappropriate for a social worker to tell a licensed medical professional how to conduct an examination).] Plaintiffs fail to explain how the evidence in this case supports a finding of gross negligence by SCDSS.[6] Without such evidence, the Court cannot conclude that there is a question of material fact at issue regarding Plaintiffs' negligence claims, and summary judgment is therefore appropriate.[7]

**Section 1983 Claim**[8]

The Court next turns to Plaintiff's claim under 42 U.S.C. § 1983. Section 1983 provides a private cause of action for constitutional violations by persons acting under

---

[6] Indeed, in their response in opposition to the summary judgment motion, Plaintiffs do not appear to argue that they can demonstrate SCDSS acted in a *grossly* negligent manner. [*See* Doc. 49 at 6–7.]

[7] Because the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' negligence claims for these reasons, the Court declines to address the parties' additional arguments.

[8] Although the Complaint purports to assert two § 1983 claims, Plaintiffs' fourth cause of action is for "Injunctive Relief Pursuant to 42 U.S.C. § 1983." [Doc. 1-1 at 19–21 ¶¶ 88–

color of state law.  The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief . . . ." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Plaintiffs allege that Defendants violated their Fourteenth Amendment rights by subjecting them to forensic medical examinations.[9]  [Doc. 1-1 at 16–21 ¶¶ 72–100.]  In

---

100.]  Because there is no such cause of action under the law, *see In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 3:11-cv-02784-JMC, 2013 WL 1316562, at *11 (D.S.C. Mar. 27, 2013) ("A claim for a declaratory judgment or injunctive relief is actually a claim for an alternative remedy, not a separate and independent cause of action."), the Court treats Plaintiffs' third and fourth causes of action as one § 1983 claim seeking both monetary and injunctive relief.

[9] Plaintiffs' § 1983 claim is not entirely clear.  It refers only to the Fourteenth Amendment but alleges that the constitutional rights at issue include the Children's rights to due process, to family integrity and autonomy, to be free from unnecessary search and seizure, and to be free from cruel and unusual punishment.  [Doc. 1-1 at 16–21 ¶¶ 72–100.]  To the extent Plaintiffs allege that the forensic medical examinations themselves violated their constitutional right to be free from unnecessary search and seizure [*id.* at 16 ¶ 73, 18 ¶ 81, 20 ¶ 95], the claim would be analyzed under the Fourth Amendment. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (holding that "if a constitutional claim is covered by a specific [federal] constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); *Tenenbaum v. Williams*, 193 F.3d 581, 605–06 (2d Cir. 1999) (holding that a medical examination of a child's vagina and surrounding areas for evidence of sexual abuse constituted a search within the meaning of the Fourth Amendment).  However, Plaintiffs have not produced evidence of any act taken by any Defendant that violated the Fourth Amendment—if anything, any alleged infringement on Plaintiffs' rights to be free from unreasonable search and seizure would have been by the medical provider who performed the examinations, not by Defendants.  *See Herrera v. Finan*, 176 F. Supp. 3d 549, 568–69 (D.S.C. 2016) ("Personal participation of a defendant is a necessary element of a § 1983 claim against a government official . . . ."), *aff'd*, 709 F. App'x 741 (4th Cir. 2017).  And Plaintiffs cannot assert a claim against Defendants for actions taken by the medical provider but must have

9

their motion for summary judgment, Defendants argue that there is no evidence that the Children's due process rights were violated.  [Doc. 43-1 at 14–15.]  Plaintiffs do not appear to have directly addressed Defendants' argument.[10]  [*See generally* Doc. 49.]

The Court concludes that no reasonable juror could find that Defendants' referral of Plaintiffs for forensic medical examinations in response to allegations of abuse violated their due process rights under the Fourteenth Amendment.  The Constitution bars states from "depriv[ing] any person of life, liberty, or property, without due process of law."  *See* U.S. Const. amend. XIV, § 1.  This provision "includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion) (internal quotation marks omitted).  Substantive due process prohibits only the most egregious and arbitrary governmental conduct that "shocks the conscience."  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  Conduct that shocks the conscience is "abusive or oppressive" in purpose and without "justification by any government interest."  *Susan Virginia Parker v. Henry & William Evans Home for Children, Inc.*, 762

---

evidence that Defendants' own actions violated the Constitution.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  To the extent Plaintiffs allege that the examinations amounted to punishment, the claim would be analyzed under the Fourteenth Amendment.  *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.").

[10] Although Plaintiffs argue that qualified immunity does not shield the individual Defendants [Doc. 49 at 14–20], they fail to address Defendants' argument that no evidence demonstrates the Children's due process rights were violated.

F. App'x 147, 156 (4th Cir. 2019) (internal quotation marks omitted). "Defining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process, to conduct *intended to injure* in some way unjustifiable by any government interest."[11]  *Slaughter v. Mayor of Balt.*, 682 F.3d 317, 321 (4th Cir. 2012) (emphasis added) (internal quotation marks omitted).  "While it is clear that intentionally harmful conduct may constitute a violation of the Fourteenth Amendment, it is equally clear that negligence alone does not amount to a constitutional violation." *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001).

Here, Plaintiffs offer no evidence that any Defendant sought to intentionally harm them by referring them for medical examinations in response to allegations of abuse. Indeed, the only evidence before the Court is that Defendants took such actions in an effort to *prevent* further harm to the Children as required by law.  See S.C. Code § 63-11-2400; [Docs. 43-2 at 4; 49-7]. As a result, no reasonable juror could find that any Defendant's conduct "shock[ed] the conscience" so as to amount to a constitutional violation.  *Cf. Parker*, 762 F. App'x at 156–58 (affirming the district court's dismissal of Fourteenth Amendment claims against department of social services case workers because the case workers' conduct in removing children from their parents' home in response to evidence of child abuse did not shock the conscience, despite allegations

---

[11] As the Fourth Circuit noted in *Slaughter*, "a lower level duty of culpability may amount to a substantive due process violation in those situations where the government is required to take care of those who have already been deprived of their liberty."  682 F.3d at 321.  However, the record in this case does not support a finding that Plaintiffs had already been deprived of their liberty at the time they were referred for the forensic medical examinations.  Nor do Plaintiffs appear to contend that a lower level of culpability applies to them.  [*See generally* Doc. 49.]

11

that they failed to conduct a reasonable investigation). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' § 1983 claim.[12]

## CONCLUSION

Wherefore, based upon the foregoing, Defendants' motion for summary judgment [Doc. 43] is GRANTED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

March 4, 2026
Columbia, South Carolina

---

[12] Because the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' § 1983 claim for these reasons, the Court declines to address the parties' additional arguments.